USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _10/2/15_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

TRUSTEES OF THE SHEET METAL           :        **OPINION AND**
WORKERS' INTERNATIONAL                :        **ORDER**
ASSOCIATION LOCAL UNION               :
NO. 28 BENEFIT FUNDS,                 :        No. 14-CV-2890 (JLC)
                                      :
                Plaintiffs,           :
                                      :
        -v.-                          :
                                      :
MAXIMUM METAL MANUFACTURERS,          :
INC., *et al.*,                       :
                                      :
                                      :
                Defendants.           :

------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiffs Trustees of the Sheet Metal Workers' International Association

Local Union No. 28 Benefit Funds (the "Funds" or "Plaintiffs") seek a default

judgment against Defendants Maximum Metal Manufacturers, Inc. ("Maximum"),

Elvis Maynard ("Maynard"), and Steven Smith ("Smith") (collectively, the

"Defendants"). The Funds' allegations stem from Defendants' failure to timely pay

certain required contributions to funds organized and operated in accordance with

the Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons

set forth below, the Court grants the Funds' motion for a default judgment in part

and denies it in part, without prejudice to renewal.

## I.    BACKGROUND

### A.    Factual Background

Plaintiffs bring this action under Sections 502(a)(3) and 515 of ERISA

(codified as amended at 29 U.S.C. § 1132) and Section 301 of the Labor-Management Relations Act of 1947 (codified as amended at 29 U.S.C. § 185) (the "Taft-Hartley Act"). Second Amended Complaint ("Compl.") ¶ 1 (Dkt. No. 30). The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act. *Id.* ¶ 8. The Funds are employee benefit plans as defined in ERISA pursuant to 29 U.S.C. §§ 1002(1)-(3), 1132(d)(1). *Id.* ¶ 5.

The Funds provide fringe benefits to eligible employees, retirees, and their dependents, on whose behalf Maximum contributes to the Funds pursuant to a collective bargaining agreement (the "CBA") between Maximum and the Union. *Id.* ¶ 6. The CBA obligates Maximum to (1) submit contribution reports setting forth the hours that each employee worked and the amount of fringe benefit contributions due pursuant to agreed rate schedules, and (2) remit such fringe benefits contributions. Compl. ¶ 20.

The four CBAs submitted by the Funds in support of their motion collectively cover the period between August 1, 2005 and July 31, 2017, and specify fringe benefit contributions that Maximum must pay for each hour worked by a covered employee.[1] Affirmation of Dana L. Henke in Support of Judgment by Default, Ex. A ("Henke Aff.") (Dkt. No. 50). The specific categories of fringe benefits include health insurance, professional training, scholarship, severance benefits, pensions, and

---

[1] The four CBAs submitted by the Fund are substantially similar in their requirements regarding fringe benefits. However, each CBA covers a different period of time at issue in this case.

promotional fund. *See, e.g.*, Henke Aff. Ex. A., at 3-5, 7-8.[2] The CBA stipulates that all contributions are to be made weekly on the same day wages are due, and allows for a five-day grace period before interest starts to accrue. *Id.* at 6. It further requires Maximum to submit weekly remittance reports, and gives the Funds the right to examine Maximum's books and records to ensure compliance with its contribution obligations. *Id.* at 6-9. In case of delinquency, the Funds are authorized to collect contributions on behalf of the employees, *id.* at 6, and the trustees of the Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA (29 U.S.C. § 1132(d)(1)). Compl. at ¶ 6. The CBA also enables the Funds to seek damages, including interest accrued on unpaid contributions, all reasonable costs, fees, and disbursements incurred in collection, and potentially liquidated damages. Henke Aff. Ex. A at 6. The interest rate for unpaid contributions in the first three CBAs was set at 24% per year. *Id.* at 6, 17, 27. In the fourth CBA, the interest rate was set at prime rate plus 12% with a minimum of 15% per year. *Id.* at 36.

The Funds allege that Maximum has failed to remit fringe benefit contributions due and owing under the CBA for the period between January 1, 2009

---

[2] For all documents related to the Henke Affirmation, the cited pagination refers to the page numbers as indicated on the ECF filings. The Court notes that Plaintiffs' failure to provide independent page numbers makes it difficult for the Court to effectively cite to the record, especially in light of the fact that Exhibit C is divided into three parts on ECF due to its size. Because of this division of Exhibit C and the lack of independent page numbers, page numbers within Exhibit C are repeated upon the beginning of a new part. Due to this repetition, the Court will refer to Exhibit C in Parts 1, 2, and 3, as demarcated on ECF.

and February 28, 2014. Compl. ¶ 22. Specifically, based upon employee pay stubs and an audit, the Funds allege that Maximum failed to remit fringe benefit contributions in the principal sum of $285,766.12. *See* Statement of Damages (Dkt. No. 48); Henke Aff. ¶ 16. The Funds also seek interest on these unpaid contributions and attorney's fees and costs associated with pursuing these unpaid contributions. *Id.* at ¶¶ 19, 20.

### B.   Procedural History

This action was commenced on April 23, 2014. (Dkt. No. 2). The complaint was amended on June 5, 2014. (Dkt. No. 5). On December 24, 2014, the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (Dkt. No. 26), and Judge Pauley referred the case to me for all purposes. (Dkt. No. 29). On December 31, 2014, Plaintiffs filed a second amended complaint. (Dkt. No. 30). The Court held a conference on January 21, 2015, at which the parties agreed to negotiate over the following 30 days and to submit a consent judgment to the Court no later than February 20, 2015 if they reached an agreement. (Dkt. No. 32).

On February 19, 2015, the parties moved for an extension of time to submit a consent judgment (Dkt. No. 36), and the Court ordered the parties to submit the consent judgment no later than April 17, 2015. (Dkt. No. 38). If the parties failed to submit a consent judgment by April 17, the Court directed the Funds to move for a default judgment no later than May 1, 2015, as Defendants had not answered the second amended complaint. *Id.* No consent judgment was submitted by April 17, 2015. On April 16, 2015, the Clerk of Court certified default as to Maximum, Maynard, and Smith. (Dkt. No. 39). On April 29, 2015, the Funds moved for a

4

default judgment against the Defendants and filed proof of service on the same

date. (Dkt. Nos. 46-47, 49-50). To date, Defendants have not answered or otherwise

responded to the Funds' second amended complaint or their motion for default

judgment.

## II.   DISCUSSION

### A.   Applicable Standards

#### 1.   Standards Governing Liability

A default judgment may be awarded in accordance with Rule 55 of the

Federal Rules of Civil Procedure "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend" against an

action. Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for the entry of a

default judgment. *Rovio Entm't., Ltd. v. Allstar Vending, Inc.*, No. 14-CV-7346

(KBF), 2015 WL 1508497, at *1 (S.D.N.Y. Apr. 1, 2015); *CAMOFI Master LDC v.

Riptide Worldwide, Inc.*, No. 10-CV-4020 (CM) (JLC), 2012 WL 6766767, at *6

(S.D.N.Y. Dec. 17, 2012). First, the movant must file an affidavit demonstrating

that the party against whom default judgment is sought has been properly served

and has failed to defend, upon which the clerk of the court enters the party's default

into the record. *Rovio Entm't*, 2015 WL 1508497 at *1. Second, after the clerk of

the court enters default against a party, if that party fails to appear or otherwise

move to set aside the default pursuant to Rule 55(c), the court may enter default

judgment. *Id.*

"Under the case law interpreting [Rule 55(b)], the default establishes [a

defendant's] liability . . . as long as the complaint has stated a valid cause of action."

5

*Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.,* No. 11-CV-5980 (RA) (JLC), 2013 WL 5977440, at \*4 (S.D.N.Y. Nov. 12, 2013) (quoting *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011), *adopted by*, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014)). "In light of [the defendant's] default, a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Onewest Bank, N.A. v. Cole*, No. 14-CV-3078 (FB) (RER), 2015 WL 4429014, at \*3 (E.D.N.Y. July 17, 2015)) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

"However, the 'district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action.'" *Laboratorios Rivas*, 2013 WL 5977440, at \*4 (quoting *Curves Int'l, Inc. v. Negron*, No. 11-CV-2986 (ADS) (GRB), 2012 WL 4490542, at \*3 (E.D.N.Y. Aug. 31, 2012)). "In other words, even after a default, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *Johnson & Johnson v. Azam Int'l Trading*, No. 07-CV-4302 (SLT) (SMG), 2013 WL 4048295, at \*8 (E.D.N.Y. Aug. 9, 2013) (quoting *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010)). Therefore, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v.*

6

*Koutsobinas*, 509 F. App'x 54 56 (2d Cir. 2013).

Moreover, the complaint must still comply with the pleading standards of the Federal Rules of Civil Procedure, which require more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The pleadings must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Despite a defendant's default, "a complaint containing only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice.'" *Johnson & Johnson*, 2013 WL 4048295, at *8 (quoting *Iqbal*, 556 U.S. at 678).

## 2. Standards Governing Damages

"It is well-settled in this Circuit that even after a default judgment is entered against defendants, 'the allegations in the complaint with respect to the amount of the damages are not deemed true.'" *Laboratorios Rivas*, 2013 WL 5977440, at *5 (quoting *Gutman v. Klein*, No. 03-CV-1570 (BMC) (RML), 2010 WL 4916722, at *6 (E.D.N.Y. Nov. 24, 2010)); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015). Plaintiffs must still establish their entitlement to recovery and thus must substantiate their claims with evidence to prove the extent of their damages. *See Bricklayers & Allied Craftworkers*, 779 F.3d at 189 (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158).

Although the Court may hold a hearing to assess those damages, a hearing is

7

not required where a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Mori v. Saito*, No. 10-CV-6465 (KBF), 2014 WL 3812326, at \*1 (S.D.N.Y. Aug. 1, 2014) (citing *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)). Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, as long the Court ensures that there was a basis for the damages specified in the default judgment. *See, e.g., Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Action S.A*, 951 F.2d at 508). "Magistrate judges and district courts have interpreted this to mean that, even when the defendant defaults and is not present to object, damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) (citations omitted).

## B. Analysis

### 1. Liability

#### a. Parties and Jurisdiction

Plaintiffs are the fiduciaries of jointly administered, multi-employer, labor management employee benefits trust funds defined by Sections 3(21)(A) and 502(a)(3) of ERISA (29 U.S.C. §§ 1002(21)(A) and 1132(a)(3)). Compl. ¶ 5. These employee benefits trust funds are established and maintained pursuant to the terms of various CBAs and the Taft-Hartley Act. *Id.* Maximum is a corporation incorporated under the laws of the State of New York and is an employer within the meaning of Section 3(5) of ERISA (29 U.S.C. § 1002(5)) and Section 301 of the Taft-

8

Hartley Act (29 U.S.C. § 185). Compl. ¶¶ 10-11. Maynard is the principal owner of Maximum, and Smith is an officer of Maximum exercising authority, control, and management over the employees and the disposition of corporate assets. Henke Aff. ¶¶ 5, 6.

As this case arises under ERISA, the Court has jurisdiction pursuant to 29 U.S.C. §§ 1132(e)(1) and (f), as well as federal question jurisdiction under 28 U.S.C. § 1331. The Court also has jurisdiction under Section 301 of the Taft–Hartley Act, 29 U.S.C. § 185(c), and derivative jurisdiction under 28 U.S.C. § 1337(a), as this is a civil action arising under an act of Congress regulating commerce and Maximum is an employer whose activities affect commerce within the meaning of the Taft–Hartley Act. *See, e.g.*, *Trustees of the Plumbers & Steamfitters Local 21 Ben. Funds v. Ne. Mech. Servs. Inc.*, No. 14-CV-958 (JGK), 2014 WL 4953599, at *1 (S.D.N.Y. Oct. 1, 2014).

### b.  Maximum, Maynard, and Smith Are Liable for Violating the CBA

Before entering a default judgment, the Court must review Plaintiffs' second amended complaint to determine whether they have stated a valid claim for relief. *See, e.g.*, *Laboratorios Rivas*, 2013 WL 5977440, at *4. In this case, the Funds allege that Maximum failed to make certain fringe benefit contributions as required by CBAs between Maximum and the Union for which Plaintiffs serve as trustees. Compl. ¶¶ 19-25. Plaintiffs assert four causes of action: (1) common law breach of contract, (2) violation of Section 515 of ERISA; (3) violation by Defendants Maynard and Smith of Section 404(a) of ERISA; and (4) violation by Defendants Maynard and

9

Smith of Section 406(a) of ERISA.

### i.    Breach of Contract

First, Plaintiffs assert a cause of action for common law breach of contract,
arguing that Maximum breached the CBA by failing to pay fringe benefit
contributions. *See* Compl. ¶¶ 22, 24. However, this claim is preempted by ERISA,
which provides for an exclusive enforcement mechanism. *See Pilot Life Ins. Co. v.
Dedeaux*, 481 U.S. 41, 43, 47-48, 56-57 (1987); *Trustees of Sheet Metal Workers' Int'l
Ass'n Local Union No. 28 Ben. Funds v. J. & A. Contractors Corp.*, No. 14-CV-4935
(KBF), 2014 WL 4733504, at *2 (S.D.N.Y. Sept. 4, 2014). Therefore, the Court
concludes that Plaintiffs are not entitled to a finding of liability as to this claim.

### ii.   Section 515 of ERISA

Second, Plaintiffs allege that Maximum violated Section 515 of ERISA, which
requires employers to make timely fringe benefit contributions in accordance with
the terms and conditions of collective bargaining agreements. 29 U.S.C. § 1145.
Section 502 of ERISA provides that upon a finding that an employer has violated
Section 515, the employer is liable for damages. *See* 29 U.S.C. § 1132(g)(2). The
terms of the CBA clearly require Maximum to make fringe benefit contributions.
*See, e.g.*, Henke Aff. Ex. A, at 3 ("Commencing with the first payroll following the
date hereof, the Employer shall pay . . . nine dollars and eighty-nine cents ($9.89)
for each hour paid for all employees covered by this Agreement."). Here, Maximum
was bound by the CBA and failed to make fringe benefit contributions. Henke Aff.
¶¶ 16-26; Compl.¶¶ 26, 33, 48, 55. Accordingly, the Court finds that Plaintiffs have

10

stated a valid claim for relief under Sections 502 and 515 of ERISA. *See, e.g., Trustees of Sheet Metal Workers' Int'l Ass'n*, 2014 WL 4733504, at *2.

### iii.    Sections 404(a) and 406(a) of ERISA

Third, Plaintiffs allege that Maynard and Smith's failure to remit fringe benefits constitutes a breach of their fiduciary duties owed to the Funds and the Court should find them liable for violating Sections 404(a) and 406(a) of ERISA. "Section 3(21) of ERISA states that 'a person is a fiduciary with respect to [an employee benefit plan] to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or *exercises any authority or control respecting management or disposition of its assets*.'"  *Sheet Metal Workers' Nat. Pension Fund v. AUL Sheet Metal Works Inc.*, No. 10-CV-1371 (KBF), 2012 WL 32237, at *4 (S.D.N.Y. Jan. 5, 2012) (quoting 29 U.S.C. § 1002(21)(A)).  To determine if Maynard and Smith are fiduciaries requires a two-part inquiry: (1) whether unpaid fringe benefit contributions are assets of the Funds; and (2) whether Maynard and Smith exercised discretionary control over those assets. *Id.*

Ordinarily, unpaid contributions are not assets of an employee benefit fund until after they are paid. *See In re Halpin*, 566 F.3d 286, 290-91 (2d Cir. 2009) ("[T]here is no indication that the parties sought to displace the ordinary presumption that an employer does not become a fiduciary of plan assets simply because it is under a contractual obligation to contribute to an employee benefit fund."); *see also Bricklayers & Allied Allied Craftworkers,* 779 F.3d at 189. However, clear contractual language can change this presumption such that unpaid

contributions become assets of the employee benefit fund upon being due, rather than upon payment. *See In re Halpin*, 566 F.3d at 287 ("[I]n the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan."); *see also Sullivan v. United Const. Field, Inc.*, No. 12-CV-682 (ENV) (VVP), 2015 WL 4040417, at *3 (E.D.N.Y. June 30, 2015) ("This clear language is sufficient to create an exception to the rule of *In re Halpin*, and renders the unpaid contributions at issue here plan assets.") (internal quotations omitted); *Sheet Metal Workers Nat. Pension Fund*, 2012 WL 32237, at *4 ("Here, the applicable contract, the CBA, states clearly that all monies 'due and owing' the Benefit Funds are considered assets of the Funds, with title 'vested in and remain[ing] exclusively in the Trustees of the respective funds.'").

Here, the CBA makes clear that contributions become assets of the Funds upon them being owed, rather than upon payment. The CBA states:

> "[e]mployer contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer."

Henke Aff. Ex. A, at 7. Accordingly, unpaid contributions are assets of the Funds and Maynard and Smith are properly characterized as fiduciaries if they exercised discretion and control over those assets.

Plaintiffs' complaint sets forth sufficient facts to conclude that Maynard and Smith had discretion and control over plan assets. Plaintiffs allege that they had managerial discretion and control over Maximum, made all decisions on behalf of

12

Maximum, signed contracts on behalf of Maximum, and made all decisions concerning payments by Maximum. Compl. ¶ 40. Plaintiffs further contend that Smith and Maynard determined which creditors Maximum would pay, when the Funds would be paid, how much the Funds would be paid, and exercised control over the money owed to the Funds. *Id.* at ¶ 41. According to Plaintiffs, Maynard and Smith comingled assets owed to the Funds with Maximum's other assets and used these assets to pay other creditors and for their own personal use. *Id.* at ¶¶ 42, 44.

These facts are sufficient for the Court to find that Maynard and Smith exercised enough control to render them fiduciaries. *See, e.g.*, *Sheet Metal Workers' Nat. Pension Fund*, 2012 WL 32237, at *5 (finding defendant to be fiduciary where he made all payment decisions for corporation, including payment to benefit funds); *Sullivan*, 2015 WL 4040417, at *3 (finding defendant to be fiduciary where he was officer of corporation, wrote checks on behalf of corporation, managed disposition of corporate assets, and controlled submissions to benefit funds).

Accordingly, the Court concludes that Maynard and Smith have violated Sections 404(a) and 406(a) of ERISA and, thus, are personally liable for the losses the Funds sustained. *See, e.g.*, *Sheet Metal Workers' Nat. Pension Fund*, 2012 WL 32237, at *5.

### iv. Conclusion

The Court finds Defendants Maximum, Maynard, and Smith jointly and severally liable for Plaintiffs' damages owing to their violations of Sections 515, 404(a), and 406(a) of ERISA.

### 2. Damages

Plaintiffs seek to recover $285,766.12 of unpaid fringe benefits, $85,950.61 in interest on these benefits, $3,260.00 in attorney's fees, and $480.00 in costs for a total of $375,456.73. *See* Statement of Damages. The Court will consider each of these categories in turn.

#### a.     Unpaid Fringe Benefit Contributions

Plaintiffs set forth eight categories of damages that add up to $285,766.12 in unpaid fringe benefits. *See* Henke Aff. Ex. C Part 1, at 11 (Dkt. No. 50-3).

#### i.     Christian Torres (9/5/2012-4/3/2013)

Plaintiffs seek unpaid fringe benefit contributions for Christian Torres from September 5, 2012 to April 3, 2013 in the amount of $26,691.32. *See* Henke Aff. Ex. C Part 3, at 27 (Dkt. No. 50-5). However, the Court cannot determine how Plaintiffs arrived at the number of hours they contend Torres worked during this period. As just one example, Plaintiffs state that Torres worked 154 hours from October 3, 2012 to October 31, 2012. *Id.* However, based on the Court's calculations, the Plaintiffs' evidence indicates that he only worked 119 hours. *Id.* at 31-32.[3] Additionally, the Court does not understand the underlying basis for these calculations. Though Plaintiffs appear to be tallying the number of hours Torres worked during this period, there is no indication as to how much Maximum

---

[3] Torres' pay stubs indicate that he worked 28 hours from October 4, 2012 to October 10, 2012; 35 hours from October 11 to October 17; 35 hours from October 18 to October 24; and 21 hours from October 25 to October 31 for a total of 119 hours. *See* Henke Aff. Ex. C Part 3, at 31-32 (Dkt. No. 50-5).

14

contributed for him during this time. If Maximum made no contributions for any hours worked by Torres, then Plaintiffs should so state.

Therefore, based on the record presented to the Court, the evidence does not support the damages Plaintiffs seek. Without a clear and accurate explanation of how many hours Torres worked and how much Maximum contributed to the Funds during this period, the Court cannot determine that Plaintiffs are entitled to these damages.

### ii.    Daniel Martin (10/17/12-4/24/13)

Plaintiffs seek unpaid fringe benefit contributions for Daniel Martin from October 17, 2012 to April 24, 2013 in the amount of $1,611.41. *See* Henke Aff. Ex. C Part 2, at 19 (Dkt. No. 50-4). The Court finds that Plaintiffs have set forth sufficient evidence to support this claim. Specifically, Plaintiffs provide evidence in the form of pay stubs indicating how many hours Martin worked during this period. Plaintiffs also clearly articulate the number of hours Maximum reported that Martin worked. Therefore, the Court can determine the number of hours Maximum failed to contribute to the Funds. Plaintiffs are entitled to contributions for the discrepancy between the number of hours actually worked and the number of hours reported. Therefore, Plaintiffs are awarded $1,611.41 in damages for Martin.

### iii.    Thalmus Hogue (1/23/13-9/25/13)

Plaintiffs seek unpaid fringe benefit contributions for Thalmus Hogue from January 23, 2013 to September 25, 2013 in the amount of $3,588.92. *See* Henke Aff. Ex. C Part 3, at 39 (Dkt. No. 50-5). However, unlike for Martin, Plaintiffs fail to

provide any evidence demonstrating how many hours Hogue worked during this period. Though Plaintiffs provide a chart alleging to set forth the number of hours he worked and the number of hours Maximum reported that he worked, Plaintiffs fail to provide any pay stubs (or any other evidence) to substantiate the fact that he actually worked the number of hours that they claim. Therefore, there is insufficient evidence for the Court to determine that Plaintiffs are entitled to these damages.

### iv.  William Slater (4/3/13-9/11/13)

Plaintiffs seek unpaid fringe benefit contributions for William Slater from April 3, 2013 to September 11, 2013 in the amount of $16,894.01. *See* Henke Aff. Ex. C Part 2, at 26 (Dkt. No. 50-4). Though Plaintiffs provide pay stubs for various other pay periods during the years 2012 and 2013 for Slater, they fail to provide pay stubs for the period at issue. Therefore, like Hogue, Plaintiffs fail to substantiate the fact that Slater actually worked the number of hours that they claim. There is thus insufficient evidence for the Court to determine that Plaintiffs are entitled to these damages.

### v.  Missing Contributions for Multiple Employees (11/7/12-5/29/13)

Plaintiffs seek unpaid fringe benefit contributions for multiple employees for the period of November 7, 2012 to May 29, 2013 in the amount of $107,795.82. *See* Henke Aff. Ex. C Part 1, at 12 (Dkt. No. 50-3). To support this claim for damages, Plaintiffs provide documentation that specifies the number of hours these employees worked over the course of this period and how much Maximum should

16

have contributed to the Funds, but did not. *Id.* The cover sheet to this documentation seemingly tallies these delinquent contributions. *Id.* However, not all of the figures on this cover page correspond to the figures in the underlying documentation in the subsequent pages. For example, when Plaintiffs complete this tally, the total reached is $112,016.32. Then, they inexplicably subtract $2500.00 and $1720.50 from this total, which leaves the figure they claim in damages to be $107,795.82. However, when the Court tallies the figures from the underlying documentation, the value reached is neither $112,016.31 nor $107,795.82, but rather $110,986.42.

The Court recognizes that Plaintiffs are seeking $107,795.82, which is less than the figure reached by the Court. However, though courts have awarded plaintiffs damages when what they seek is less than that to which they are entitled, *see, e.g., Trustees of the Operative Plasterers' and Cement Masons' Int'l. Ass'n Local 262 Welfare Fund v. Emerald Drywall Finishing Corp.*, No. 14-CV-4631 (JGK) (JLC), 2015 WL 4621534, at *3 n.1 (S.D.N.Y. July 31, 2015), the Court will not do so in this instance. Here, though the Court surmises that Plaintiffs are entitled to the aggregate total of the unpaid contributions reported in the documentation (which the Court determines to be $110,986.42), the Court cannot be sure that it is using the appropriate method to support its calculation. Specifically, because the cover sheet to the documentation lacks any explanation, subtracts values not in the underlying documentation, and the constituent parts of the underlying documentation do not add up to Plaintiffs' claimed total, the Court cannot be certain

that the method it employed to reach the total of $110,986.42 is accurate. Therefore, given the possibility that this calculation is wrong, the Court cannot be sure that the $107,795.82 that Plaintiffs seek is actually less than that to which it is entitled. Accordingly, the Court concludes that there is insufficient evidence to support Plaintiffs' claim to these damages.

### vi.  William Slater (10/10/13-1/15/14)

Plaintiffs seek unpaid fringe benefit contributions for William Slater from October 10, 2013 to January 15, 2014 in the amount of $6,479.00. *See* Henke Aff. Ex. C Part 1, at 11 (Dkt. No. 50-3). However, Plaintiffs again fail to provide evidence to explain the discrepancy between the total number of hours Slater worked and the total number of hours Maximum reported. Though Plaintiffs submit pay stubs for this period, *see* Henke Aff. Ex. C Part 3, at 22-25, Plaintiffs fail to indicate the number of hours Maximum reported during this period. Accordingly, the Court cannot determine whether the damages Plaintiffs seek are an accurate representation of Maximum's delinquent contributions.

### vii.  "PROD-HDLRS" (1/14-2/14)

Plaintiffs seek unpaid fringe benefits for a category they entitle "PROD-HLDRS" for the period of January 2014 to February 2014 in the amount of $1,743.00. *See* Henke Aff. Ex. C Part 1, at 11 (Dkt. No. 50-3). However, Plaintiffs do not explain what this figure constitutes or how they calculated it. Further, none of the evidence they submitted appears related to this figure. Accordingly, the

Court concludes that there is insufficient evidence to support Plaintiffs' claim to these damages.

### viii.   Unpaid Contributions (1/09-12/12)

Plaintiffs further seek all unpaid contributions, not otherwise already identified in another category, between January 2009 and December 2012 in the amount of $120,962.64. *See* Henke Aff. Ex. C Part 1, at 11 (Dkt. No. 50-3). To support this claim for damages, Plaintiffs submitted an audit report identifying hours that employees worked, but for which Maximum failed to contribute to the Funds. *Id.* 3-10; *see also* Henke Aff. ¶ 16. This audit constitutes sufficient proof of these damages. *See, e.g., Alston v. Northstar La Guardia LLC*, No. 10-CV-3611 (LAK) (GWG), 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 2, 2010), *adopted*, No. 10-CV-6311 (Dkt. No. 12) (S.D.N.Y. Sept. 30, 2012); *New York City Dist. Council of Carpenters v. Rock–It Contracting*, No. 09-CV-9479 (JGK) (AJP), 2010 WL 1140720, at *2 (S.D.N.Y. Mar. 26, 2010), *adopted*, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010). After reviewing Plaintiffs' audit, the Court concludes that they have adequately supported this claim for damages. Accordingly, the Court awards Plaintiffs $120,962.64 for this category of damages.

### ix.    Conclusion

The Court concludes that Plaintiffs are entitled to damages in the amount of $122,574.05, which represents damages relating to Daniel Martin's unpaid contributions and all unpaid contributions between January 2009 and December 2012. The Court denies Plaintiffs' other claims for damages without prejudice to

renewal upon submission of sufficient documentation and/or recalculation consistent with this Opinion and Order. Specifically, to the extent they are seeking damages that fall into various categories, Plaintiffs must explain precisely how they arrive at the amount of damages within each of these categories and what evidence supports the respective categories.

### b.  Interest

Under ERISA, Plaintiffs are also entitled to interest on unpaid fringe benefit contributions. *See* 29 U.S.C. § 1132(g)(2)(B) (stating that interest should be determined using the rate provided under the plan). Pursuant to the most recent CBA, "[a]ll delinquent contributions shall bear interest of the prime rate plus twelve percent (12%) with a minimum of fifteen percent (15%) per year." Henke Aff. Ex. A, at 36-37 (Dkt. No. 50-1). Earlier versions of the CBA subject delinquent contributions to a higher interest rate of 24% per year. *See id.* at 6, 17, 27. In calculating the interest they are seeking, Plaintiffs used an interest rate of 15.25% for all years (12% plus prime rate of 3.25%). Plaintiffs recognize that they are entitled to a higher interest rate during earlier periods, but, nonetheless, only seek this 15.25% rate for all years. *See* Henke Aff. at ¶ 19.

Applying this 15.25% rate to the damages the Court is awarding, Plaintiffs are entitled to interest in the amount of $41,661.40. *See* Henke Aff. Ex. D, at 2 (Dkt. No. 50-6). Specifically, Plaintiffs are entitled to $41,189.44 in interest on the unpaid contributions from January 2009 to December 2012 and $471.96 in interest on Daniel Martin's unpaid contributions from October 17, 2012 to April 24, 2013.

*Id.* Because these are the only two categories of damages the Court is awarding

Plaintiffs at this time, its application for interest on other categories of damages is

denied without prejudice.

### c.    Attorney's Fees and Costs

Finally, ERISA entitles Plaintiffs to reasonable attorney's fees and costs. 29

U.S.C. § 1132(g)(2)(D); *see also Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224,

226 (2d Cir. 2004). Although "[t]here is no precise rule or formula for making

[attorney's fee award] determinations," *Hensley v. Eckerhart*, 461 U.S. 424, 436

(1983), in the Second Circuit, reasonable attorney's fee awards are calculated using

the standard of the "presumptively reasonable fee." *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cnty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also*

*Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). In

determining the presumptively reasonable fee calculation, district courts should

"bear in mind all of the case-specific variables that [the Second Circuit] and other

courts have identified as relevant to the reasonableness of attorney's fees in setting

a reasonable hourly rate." *Simmons*, 575 F.3d at 172 (quoting *Arbor Hill*, 522 F.3d

at 117-18). These variables include the *Johnson* factors that a "reasonable, paying

client wishes to spend the minimum necessary to litigate the case effectively."[4]

---

[4] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and
difficulty of the questions; (3) the level of skill required to perform the legal service
properly; (4) the preclusion of employment by the attorney due to acceptance of
the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or
contingent; (7) the time limitations imposed by the client or the circumstances; (8)
the amount involved in the case and the results obtained; (9) the experience,
reputation, and ability of the attorneys; (10) the "undesirability" of the case;

*Arbor Hill*, 522 F.3d at 190. Additionally, "[a]ccording to the forum rule, courts 'should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill*, 493 F.3d at 119).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Moreover, applications for an award of fees must be documented by time records that are contemporaneously created and that specify, for each attorney, the date, the hours expended, and the nature of the work done. *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (citations omitted). "[C]ounsel . . . [are] not required to record in great detail how each minute of [their] time was expended," but "counsel should identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437 n.12.

The contemporaneous billing records provided by Plaintiffs demonstrate that Ms. Henke spent 11.2 hours on this case at a rate of $250.00 per hour, for a total of $2,800.00. Henke Aff. ¶¶ 20-21 & Ex. E (Dkt. No. 50-7). The records also indicate that 4.6 hours of paralegal time was spent on this case at a rate of $100.00 per hour, for a total of $460.00. *Id.* The Court concludes in evaluating the record in its entirety that the time expended by counsel was reasonable, and her hourly rate is

---

(11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989).

commensurate with the rates charged in this District. *See, e.g., Sheehan v. Metropolitan Life Insurance Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (finding rate of $300.00 per hour for associate at comparable firm to be reasonable). *Cf. Board of Trustees of the United Union of Roofers, Waterproofers & Allied Workers v. New York Roofing Co.*, No. 13-CV-2865, 2015 WL 1535373, at *6 (E.D.N.Y. Mar. 5, 2015) (Henke awarded fees at the rate of $250.00 per hour); *Trustees of Metal Polishers Local 8A-28A v. Superiro Scaffolding Servs. Inc.*, No. 12-CV-4251 (ARR) (RML), 2013 WL 4095495, at *3 (E.D.N.Y. Aug. 9, 2013) (same). Therefore, Plaintiffs are awarded $3,260.00 in attorney's fees.

In addition, Plaintiffs seek litigation costs in the amount of $480.00, which includes a $400.00 filing fee and $80.00 process server fee. *See* Henke Aff. ¶26. These costs are reasonable and are specifically recoverable under 29 U.S.C. § 1132(g)(2)(D). *See Alston*, 2010 WL 3432307, at *4 (awarding $430.00 in costs in ERISA action to recover unpaid fringe benefit contributions after default judgment); *New York City Dist. Council of Carpenters Pension Fund v. Quantum Constr.*, No. 06-CV-13150 (GEL) (JCF), 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (awarding $2,505.50 in costs in similar action after default judgment). Accordingly, Plaintiffs are awarded $480.00 in costs.

## III.   CONCLUSION

For the foregoing reasons, the Court finds Defendants Maximum, Maynard, and Smith jointly and severally liable for their violations of Sections 515, 404(a), and 406(a) of ERISA. Accordingly, Plaintiffs should be awarded (1) $122,574.05 in

unpaid fringe benefit contributions; (2) $41,661.40 in interest; (3) $3,260.00 in attorney's fees and (4) $480.00 in court costs for a total of $167,975.45. As to Plaintiffs' other claims for damages, the Court denies them without prejudice to renewal. Any further submissions in support of these claims must be submitted to the Court by October 16, 2015 or the Court will direct the Clerk to enter judgment in the amount of $167,975.45.

The Clerk of Court is directed to close the motion at docket entry number 47.

**SO ORDERED.**

Dated: New York, New York
October 2, 2015

JAMES L. COTT
United States Magistrate Judge

**A Copy of this Opinion and Order has been mailed to the following:**

Maximum Metal Manufacturers, Inc.
245 Longstreet Avenue
Apt. #2
Bronx, NY 10465

Elvis Maynard
109 Winthrop Avenue
New Rochelle, NY 10801

Steven Smith
245 Longstreet Avenue
Apt. #2
Bronx, NY 10465