USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/7/15_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

TRUSTEES OF THE SHEET METAL
WORKERS' INTERNATIONAL
ASSOCIATION LOCAL UNION
NO. 28 BENEFIT FUNDS,

              Plaintiffs,

    -v.-

MAXIMUM METAL MANUFACTURERS,
INC., *et al.*,


              Defendants.
--------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**OPINION AND
ORDER**

No. 14-CV-2890 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

    On October 2, 2015, the Court granted a default judgment to Plaintiffs

Trustees of the Sheet Metal Workers' International Association Local Union No. 28

Benefit Funds (the "Funds" or "Plaintiffs") against Defendants Maximum Metal

Manufacturers, Inc. ("Maximum"), Elvis Maynard ("Maynard"), and Steven Smith

("Smith") (collectively, the "Defendants"). *See* Opinion and Order ("Initial Order")

(Dkt. No. 51). Plaintiffs sought $375,456.73 in damages, which was comprised of

unpaid fringe benefit contributions, interest, attorney's fees, and court costs. In its

Initial Order, the Court granted Plaintiffs $122,574.05 in unpaid fringe benefits,

$41,661.40 in interest, $3,260.00 in attorney's fees, and $480.00 in court costs for a

total of $167,975.45. As to the damages the Court did not award, it denied

Plaintiffs' application without prejudice to renewal on a more developed record. On

October 14, 2015, Plaintiffs made a further submission to justify the additional

damages. They now seek an additional $158,471.94 in unpaid fringe benefits and $43,473.63 in interest. For the reasons set forth below, the Court grants Plaintiffs' renewed application.

## I.    BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this case, which the Court detailed at length in its Initial Order granting Plaintiffs' motion for default judgment and granting in part their request for damages. *See* Initial Order at 1-5. Therefore, the Court will only summarize its Initial Order, and then discuss Plaintiffs' renewed application.

### A.    Initial Application for Damages

In their initial application, Plaintiffs identified eight discrete categories of unpaid fringe benefit contributions: 1) for Christian Torres from 09/05/12 to 04/03/13 in the amount of $26,691.32; 2) for Daniel Martin from 10/17/12 to 04/24/13 in the amount of $1,611.41; 3) for Thalmus Hogue from 01/23/13 to 09/11/13 in the amount of $3,588.92; 4) for William Slater from 03/28/13 to 09/11/13 in the amount of $16,894.01; 5) for multiple employees from 11/07/12 to 05/29/13 in the amount of $107,795.82; 6) for William Slater from 10/10/13 to 01/15/14 in the amount of $6,479.00; 7) for a group entitled "PROD-HDLRS" from 01/14 to 02/14 in the amount of $1,743.00; and 8) for other employees not otherwise identified from 01/09 to 12/12 in the amount of $120,962.64. These unpaid contributions amounted to $285,766.12.

Of these eight categories of damages, the Court granted Plaintiffs' request only as to two of them. Specifically, the Court granted $1,611.41 in unpaid

2

contributions for Martin and $120,962.64 in unpaid contributions for multiple

employees during the period between January 2009 and December 2012. *Id*. at 15,

19. As to the other categories, the Court concluded there was insufficient evidence

to award the damages sought. Accordingly, applying an interest rate of 15.25% to

the awarded amount over the time period at issue, the Court granted Plaintiffs

$41,661.40 in interest. *Id*. at 20-21. Additionally, the Court granted Plaintiffs

$3,260.00 in attorney's fees and $480.00 in court costs. *Id*. at 21-23.

## II.   RENEWED APPLICATION FOR DAMAGES

### A.   Standard for Awarding Damages

"It is well-settled in this Circuit that even after a default judgment is entered

against defendants, 'the allegations in the complaint with respect to the amount of

the damages are not deemed true.'" *Laboratorios Rivas, SRL v. Ugly & Beauty,*

*Inc.*, No. 11-CV-5980 (RA) (JLC), 2013 WL 5977440, at *5 (S.D.N.Y. Nov. 12, 2013)

(quoting *Gutman v. Klein*, No. 03-CV-1570 (BMC) (RML), 2010 WL 4916722, at *6

(E.D.N.Y. Nov. 24, 2010)); *see Bricklayers & Allied Craftworkers Local 2, Albany,*

*N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir.

2015). Plaintiffs must still establish their entitlement to recovery and thus must

substantiate their claims with evidence to prove the extent of their damages. *See*

*Bricklayers & Allied Craftworkers*, 779 F.3d at 189 (quoting *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

Although the Court may hold a hearing to assess those damages, a hearing is

not required where a sufficient basis on which to make a calculation exists. *See*

3

Fed. R. Civ. P. 55(b)(2); *see also Mori v. Saito*, No. 10-CV-6465 (KBF), 2014 WL
3812326, at *1 (S.D.N.Y. Aug. 1, 2014) (citing *Action S.A. v. Marc Rich & Co., Inc.*,
951 F.2d 504, 508 (2d Cir. 1991)).   Indeed, the Second Circuit has approved the
holding of an inquest by affidavit, without an in-person court hearing, as long the
Court ensures that there was a basis for the damages specified in the default
judgment.  *See, e.g., Cement & Concrete Workers Dist. Council Welfare Fund,
Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro
Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Action S.A*, 951
F.2d at 508).   Courts "have interpreted this to mean that, even when the defendant
defaults and is not present to object, damages must be based on admissible
evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d
Cir. 2010) (summary order) (citations omitted).

## B.   Renewed Application

On October 14, 2015, Plaintiffs renewed their application for damages.[1]  *See*
Supplemental Affirmation of Dana L. Henke, Esq. for Default Judgment ("Henke
Aff.") (Dkt. No. 52).  As to the six categories of damages that the Court initially
denied, Plaintiffs renew their application as to each, except for two categories.
First, Plaintiffs no longer seek any damages relating to the "PROD-HDLRS"

---

[1] Plaintiffs served this renewed application on Defendants by mail on October 16,
2015.  *See* Certificate of Service (Dkt. No. 54).  Defendants have not submitted any
response.

4

category.[2]  Second, in their initial application, Plaintiffs sought $6,479.00 for

William Slater for the period of 10/10/13 to 01/15/14.  However, because some

payments have since come in for this period, Plaintiffs have reduced their claim to

$3,501.87.  As to the other categories, Plaintiffs seek the same amount of damages

as their initial application.  In total, Plaintiffs seek $158,471.94 in additional

unpaid fringe benefit contributions and $43,473.63 in interest.  Henke Aff. at ¶ 6.

The Court addresses each category of damages below.

### 1.   Christian Torres (09/05/2012-04/03/2013)

Plaintiffs seek unpaid fringe benefit contributions for Christian Torres from

September 5, 2012 to April 3, 2013 in the amount of $26,691.32.[3]  *Id.* at ¶ 4.a.

During this period, Torres worked a total of 851.50 hours, but no contributions were

made to the Fund for his fringe benefits.  *Id.*; Heneke Aff. Ex. B. at 2-13.  To support

their claim, Plaintiffs provide paystubs for this period demonstrating Torres worked

851.50 hours and affirm that Defendants made no contributions during this period.

*Id*; Henke Aff. at ¶ 4.a.  Accordingly, based on the contribution rates as set forth in

---

[2] As the Court noted previously, Plaintiffs never explained what this category
represented.  *See* Initial Order at 18.

[3] In their initial application, Plaintiffs failed to clearly articulate the number of
hours Torres worked during this period and how much Defendants contributed in
fringe benefits.  *See* Initial Order at 14.  In their renewed application, Plaintiffs
identify the number of hours Torres worked (as evidenced by paystubs) and affirm
that Defendants failed to make any contributions for those hours.  Henke Aff. at
¶ 4.a.

5

the governing collective bargaining agreement ("CBA"), the Court grants Plaintiffs

the damages they seek in the amount of $26,691.32.[4]

### 2.   Thalmus Hogue (01/23/2013-09/25/2013)

Plaintiffs seek unpaid fringe benefit contributions for Thalmus Hogue from

January 23, 2013 to September 25, 2013 in the amount of $3,588.92.[5]  Henke Aff. at

¶ 4.c.  During this period, Hogue worked a total of 183.50 hours, but Defendants

only made contributions for 69 of these hours, thus leaving 114.50 hours unpaid.  To

support their claim, Plaintiffs provide paystubs for this period demonstrating

Torres worked 183.50 hours and affirm that Defendants only made contributions for

69 hours.  Henke Aff. at ¶ 4.c.; Henke Aff. Ex. D at 3-7.  Accordingly, based on the

contribution rates as set forth in the governing CBA, *see supra* at note 4, the Court

grants Plaintiffs the damages they seek in the amount of $3,588.92.

### 3.   William Slater (03/28/2013-09/11/2013)

Plaintiffs seek unpaid fringe benefit contributions for William Slater from

March 28, 2013 to September 11, 2013 in the amount of $16,894.01.[6]  Henke Aff. at

---

[4] During this period, the fringe benefit contribution rate started at $30.93 per hour, but increased to $32.15 when a new CBA went into effect.  Henke Aff. Ex. C at 3, 5.

[5] In their initial application, Plaintiffs failed to provide paystubs to substantiate how many hours Hogue worked during this period.  *See* Initial Order at 15-16.  In their renewed application, Plaintiffs provide paystubs indicating the number of hours Hogue worked and affirm that Defendants only made contributions for a portion of those hours.  Henke Aff. at ¶ 4.c.

[6] In their initial application, Plaintiffs failed to provide paystubs to substantiate how many hours Slater worked during this period.  *See* Initial Order at 16.  In their renewed application, Plaintiffs provide Slater's paystubs and affirm that

¶ 4.d. During this period, Slater worked a total of 532 hours, but no contributions were made to the Fund for his fringe benefits. *Id.* To support their claim, Plaintiffs provide paystubs for this period demonstrating Slater worked 532 hours. Henke Aff. Ex. E. at 3-9. Accordingly, based on the contribution rate as set forth in the governing CBA, the Court grants Plaintiffs the damages they seek in the amount of $16,894.01.

### 4. Missing Contributions for Multiple Employees (11/07/2012-05/29/2013)

Plaintiffs seek unpaid fringe benefits contributions for multiple employees for the period of November 7, 2012 to May 29, 2013 in the amount of $107,795.82. Henke Aff. at ¶ 4.e.[7] To support their claim, Plaintiffs provide documents they received from Defendants which identify the number of hours each employee worked and the total benefit contribution owed. Henke Aff. Ex. F at 3-32. The total contributions owed for this period amounted to $112,016.32, but the evidence demonstrates that Defendants only contributed $4,220.00 towards this amount.

---

Defendants failed to make any contributions for those hours worked. Henke Aff. at ¶ 4.d.

[7] In their initial application for damages as to this category, Plaintiffs submitted underlying documentation as evidence to support their claim, but the Court did not see the relationship between this underlying documentation and the damages Plaintiffs sought. *See* Initial Order at 16-18. However, in their renewed application, Plaintiffs clearly explain, as discussed above, the basis for the damages they seek. Henke Aff. at ¶ 4.e.

Henke Aff. at ¶ 4.e.  Accordingly, Plaintiffs seek the difference of $107,795.82 in damages, which the Court grants them.[8]

### 5.    William Slater (11/28/2013-01/15/2014)

Plaintiffs seek additional unpaid fringe benefit contributions for William Slater from November 28, 2013 to January 15, 2014 in the amount of $3,501.87.[9] Henke Aff. at ¶ 4.f.  During this period, Slater worked a total of 113 hours, but no contributions were made to the Fund for these hours worked.[10]  *Id.*  To support their claim, Plaintiffs provide paystubs for this period demonstrating Slater worked 113 hours.  Henke Aff. Ex. G at 3-4.  Accordingly, based on the contribution rate as set forth in the governing CBA, the Court grants Plaintiffs the damages they seek in the amount of $3,501.87.

### 6.    Conclusion

The Court concludes that Plaintiffs are entitled to damages for unpaid fringe benefit contributions in the amount of $158,471.94.  This amount is in addition to the $122,574.05 of unpaid fringe benefit contributions that the Court awarded

---

[8] The Court notes that it calculates the difference as $107,796.32 ($112,016.32 – $4,220.00 = $107,796.32).  However, because Plaintiffs seek less than this amount, the Court will grant them their requested sum.

[9] Plaintiffs had originally sought $6,479.00 in unpaid contributions for Slater during this period.  Henke Aff. at ¶ 4.f.  However, since filing their initial application, they have received some payments.  *Id.*  Accordingly, they now seek $3,501.87.

[10] In their initial application, Plaintiffs provided paystubs to substantiate the number of hours Slater worked during this period.  However, they did not say how much Defendants contributed for Slater during this period.  *See* Initial Order at 18. In their renewed application, Plaintiffs affirm that Defendants made no contributions for Slater during this period.  Henke Aff. ¶ 4.f.

Plaintiffs in its Initial Order. Initial Order at 19. Therefore, in total, Plaintiffs are awarded $281,045.99 in unpaid fringe benefit contributions.

### C.   Interest

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiffs are also entitled to interest on unpaid fringe benefit contributions. See 29 U.S.C. § 1132(g)(2)(B) (stating that interest should be determined using the rate provided under the plan). Pursuant to the most recent CBA, "[a]ll delinquent contributions shall bear interest of the prime rate plus twelve percent (12%) with a minimum of fifteen percent (15%) per year." Henke Initial Affirmation ("Henke Initial Aff."), Ex. A at 36-37 (Dkt. No. 50-1). Earlier versions of the CBA subjected delinquent contributions to a higher interest rate of 24% per year. See id. at 6, 17, 27. In calculating the interest they are seeking, Plaintiffs used an interest rate of 15.25% for all years (12% plus prime rate of 3.25%). Henke Aff. at ¶ 5. Plaintiffs recognize that they are entitled to a higher interest rate during earlier periods, but, nonetheless, only seek this 15.25% rate for all years. Henke Initial Aff. at ¶ 19.

Applying this 15.25% rate to the additional damages the Court is awarding, Plaintiffs are entitled to interest in the amount of $43,473.63. Henke Aff. Ex. A at 2. This amount is in addition to the $41,661.40 in interest that the Court awarded Plaintiffs in its Initial Order. Initial Order at 20. Therefore, in total, Plaintiffs are awarded $85,135.03 in interest.

### III.   CONCLUSION

For the foregoing reasons, the Court awards Plaintiffs $158,471.94 in unpaid

fringe benefit contributions and $43,473.63 in interest. These amounts are in addition to the damages the Court awarded in its Initial Order. Therefore, in total, Defendants owe $281,045.99 in unpaid fringe benefit contributions, $85,135.03 in interest, $3,260.00 in attorney's fees, and $480.00 in court costs. Accordingly, the Clerk of Court is respectfully directed to enter judgment against Defendants and in favor of Plaintiffs in the amount of $369,921.02, for which Defendants are jointly and severally liable due to their violations of Sections 515, 404(a), and 406(a) of ERISA. *See* Initial Order at 9-13. The Clerk of Court is also directed to close the case.

**SO ORDERED.**

Dated: New York, New York
December 7, 2015

JAMES L. COTT
United States Magistrate Judge

**A Copy of this Opinion and Order has been mailed to the following:**

Maximum Metal Manufacturers, Inc.
245 Longstreet Avenue
Apt. #2
Bronx, NY 10465

Elvis Maynard
109 Winthrop Avenue
New Rochelle, NY 10801

Steven Smith
245 Longstreet Avenue
Apt. #2
Bronx, NY 10465